IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AURA LIGHT US INC.,                  :

    Plaintiff,                   :

v.                                   :   Civil Action No. GLR-15-3198

LTF INTERNATIONAL LLC, et al.   :

    Defendants.                  :

---

AURA LIGHT US INC.,                  :

    Plaintiff,                   :

v.                                   :   Civil Action No. JFM-15-3200

LTF INTERNATIONAL LLC, et al.   :

    Defendants.                  :

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', LTF International LLC ("LTF International"), LTF Lighting LLC ("LTF Lighting") (collectively, "LTF"), and Paul V. Palitti, Jr., Motions and Supplemental Motions to Dismiss Complaint for Lack of Subject-Matter Jurisdiction (ECF Nos. 5, 10 GLR-15-3198; ECF Nos. 5, 20 JFM-15-3200).[1] Also pending is Plaintiff's, Aura Light US Inc. ("Aura US"), Motion for Summary Judgment (ECF No. 11, JFM-15-3200). The Motions are ripe for disposition. No hearing is necessary.

---

[1] Defendants' Supplemental Motion to Dismiss Complaint for Lack of Subject-Matter Jurisdiction in Aura Light US Inc. v. LTF International LLC, No. GLR-15-3198 (D.Md. filed Oct. 20, 2015) is styled as a "Supplemental Memorandum" in support of the Motion to Dismiss Complaint for Lack of Subject-Matter Jurisdiction. (ECF No. 10, GLR-15-3198). The parties agreed to treat the Supplemental Memorandum as a motion. (ECF No. 13, GLR-15-3198).

See Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will deny Defendants' Motions and Supplemental Motions to Dismiss.  The Court will also deny Aura Light's Motion for Summary Judgment without prejudice.

## I.   BACKGROUND

Aura US, a Delaware corporation, markets and sells lighting products throughout North and South America.  (Compl. ¶ 2, ECF No. 1, GLR-15-3198).  Aura US is a subsidiary of a Swedish limited liability company, Aura Light International AB ("Aura International"), which manufactures and resells lighting products internationally.  (Id. ¶ 10).  LTF International and LTF Lighting are Maryland limited liability companies that work as wholesale distributors and resellers of light-emitting diode (LED) products in North America.  (Id. ¶¶ 3, 4).  James Industry Group Co., Ltd. ("James"), a Hong Kong corporation, manufactures most of the lighting products that LTF sells.   (Id. ¶ 9).  Palitti provides management services for an umbrella of affiliated companies, including LTF.  (Id. ¶ 5).

In January 2015, LTF introduced Aura US to James, and the parties engaged in negotiations to create a new business venture for the wholesale marketing, distribution, and sale of LED and other lighting products to commercial customers throughout North America.  (Id. ¶ 11).  Ultimately, the negotiations broke down, and in May 2015, the parties elected not to proceed with the proposed

new business venture.  (Id. ¶ 12).  During the period when negotiations were ongoing, however, Defendants submitted thirty-four purchase orders to Aura US for specific lighting products. (Id. ¶ 14; Compl. ¶ 14, ECF No. 1, GLR-15-3200).  Defendants have either refused to accept delivery of or pay for approximately $9 million worth of lighting products that Aura US manufactured to sell to Defendants under the purchase orders.  (Compl. ¶¶ 15, 21, 22, GLR-15-3198); (Compl. ¶¶ 15-18, ECF No. GLR-15-3200).

On October 20, 2015, Aura US initiated two breach-of-contract actions against Defendants (the "Actions").  See Aura Light US Inc. v. LTF Int'l LLC, No. GLR-15-3198 (D.Md. filed Oct. 20, 2015); Aura Light US Inc. v. LTF Int'l LLC, No. JFM-15-3200 (D.Md. filed Oct. 20, 2015) ("Aura II").  On November 20, 2015, Defendants filed Motions to Consolidate the Actions and Motions to Dismiss Complaint for Lack of Subject-Matter Jurisdiction.  (ECF Nos. 4, 5, GLR-15-3198; ECF Nos. 4, 5, JFM-15-3200).  Aura US filed Oppositions to Defendants' Motions to Consolidate and Motions to Dismiss on December 4, 2015 (ECF Nos. 6, 7, GLR-15-3198; ECF Nos. 6, 7, JFM-15-3200).  Defendants filed Replies in further support of their Motions to Dismiss on December 21, 2015 (ECF No. 8, GLR-15-3198; ECF No. 8, JFM-15-3200).  On December 28, 2015, Aura US filed a Motion for Summary Judgment (ECF No. 11, JFM-15-3200).

On December 30, 2015, the Honorable J. Frederick Motz set a February 29, 2016 deadline for jurisdictional discovery. (ECF No.

3

12, JFM-15-3200).   On March 28, 2016, Defendants filed an
Opposition to Aura US's Motion for Summary Judgment (ECF No. 22,
JFM-3200) and Supplemental Motions to Dismiss Complaint for Lack of
Subject-Matter Jurisdiction (ECF No. 10, GLR-15-3198; ECF No. 20,
JFM-15-3200).   Aura US filed Oppositions to the Supplemental Motion
to Dismiss on April 14, 2016.   (ECF No. 14, GLR-15-3198; ECF No.
27, JFM-15-3200).   On April 20, 2016, Aura US filed a Reply in
further support of its Motion for Summary Judgment.   (ECF No. 31,
JFM-15-3200).   On April 25, 2016, the Court granted Defendants'
Motions to Consolidate the Actions.   (ECF No. 17, GLR-15-3198; ECF
No. 32, JFM-15-3200).   Finally, on May 2, 2016, Defendants filed a
Reply in further support of their Supplemental Motions to Dismiss.
 (ECF No. 19, GLR-15-3198).

## II.   DISCUSSION

### A.   Motions to Dismiss for Lack of Subject-Matter Jurisdiction

#### 1.   Legal Standards

Federal Rule of Civil Procedure 12(b)(1) governs motions to
dismiss for lack of subject-matter jurisdiction.   A defendant
challenging a complaint under Rule 12(b)(1) may advance a "facial
challenge, asserting that the allegations in the complaint are
insufficient to establish subject matter jurisdiction, or a factual
challenge, asserting 'that the jurisdictional allegations of the
complaint [are] not true.'"   Hasley v. Ward Mfg., LLC, No. RDB-13-
1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in

original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

Under 28 U.S.C. § 1332(a)(1) (2012), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  The parties must be completely diverse, "meaning that 'no party shares common citizenship with any party on the other side.'" Cunningham v. Twin City Fire Ins. Co, 669 F.Supp.2d 624, 627 (D.Md. 2009) (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)).  The Court construes 28 U.S.C. § 1332 strictly and resolves any doubts against federal jurisdiction.  Trans/Air Mfg. Corp. v. Merson, 524 F.Supp.2d 718, 721 (D.Md. 2007) (citation omitted). When determining whether there is diversity jurisdiction, the Court considers the citizenship of the parties when the action commenced. Athena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999).  For purposes of diversity jurisdiction, a corporation is a citizen of every State in which it is incorporated or maintains its principal place of business.  28 U.S.C. § 1332(c)(1).

There are two tests for determining where a corporation has its principal place of business: the "nerve center test" and the "place of operations test."  Athena Auto., 166 F.3d at 290.  The Court should apply the nerve center test "when a corporation engages primarily in the ownership and management of geographically diverse investment assets."  Id.  The nerve center test is particularly appropriate when a corporation acts as a holding

company or "passive investment vehicle." Merson, 524 F.Supp.2d at
722 (quoting Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir.
1998)).   Under this test, a corporation's principal place of
business is "that place where the corporation 'makes the "home
office," or place where the corporation's officers direct, control,
and coordinate its activities.'" Id. (quoting Peterson v. Cooley,
142 F.3d 181, 184 (4th Cir. 1998).

Alternatively, when a corporation has "multiple centers of
manufacturing, purchasing, or sales," the Court applies the "place
of operations test."  Id. (quoting Peterson, 142 F.3d at 184).
Under this test, a corporation's principal place of business is
"the place where the bulk of corporate activity takes place." Id.
(quoting Peterson, 142 F.3d at 184).   In applying this test,
"relevant   considerations   include   the   location(s)   of   the
corporation's offices, personnel and tangible assets, as well as
the locus of its day-to-day operations." Id. (citing Peterson, 142
F.3d at 184–85).   Other relevant considerations include "the
location(s) where meetings are held, taxes are paid, and corporate
records are kept, in addition to the location that 'the corporation
would consider its home.'"  Id. (citation omitted).

## 2.  Analysis

Aura US asserts the Court has diversity jurisdiction because
when Aura US commenced the Actions, its principal place of business
was in Irvine, California.  Defendants raise a factual challenge to

this assertion, contending Aura US's principal place of business was in Hunt Valley, Maryland, which defeats complete diversity because Defendants are all citizens of Maryland.  Aura US has the burden of proving the negative -- that at the time it commenced the Actions in October 2015, Aura US's principal place of business was <u>not</u> in Maryland.

To assess whether Aura US has carried its burden, the Court must determine which test to apply.  There is no evidence that Aura US operates as a holding company or passive investment vehicle. Aura US designs, manufactures, markets, and sells lighting components.  (<u>See</u> Jones Dep. 10, Feb. 18, 2016, ECF No. 10-6, GLR-15-3198).  While Aura US manages all of its purchasing and sales activities from only one location -- Irvine, California -- Aura US warehouses its products in California, Texas, Florida, Pennsylvania, Indiana, and Nevada.  (<u>See</u> Jones Aff. ¶¶ 6, 8, ECF No. 7-1); (Jones Dep. 41:16–18).  Additionally, in April 2015, Aura US signed an engagement letter with ClearView Consulting, Inc. ("ClearView"), under which ClearView agreed to provide financial and administrative services such as accounting, processing payroll, and preparing tax returns.  (<u>See</u> ECF No. 15-4, GLR-15-3198). ClearView performs these services out of its Hunt Valley, Maryland office.  (<u>See</u> Elder Dep. 8, Feb. 23, 2016, ECF No. 15-2, GLR-15-3198); (Jones Aff. ¶ 13).  Accordingly, because Aura US's

operations span multiple locations, the Court will apply the place
of operations test.

Aura US presents an affidavit and deposition testimony from
Constance Jones, Aura US's Vice President of North and South
America.  In October 2015, Jones was Aura US's Director of North
America.  (Jones Dep. 9).  Aura US has employed Jones since its
inception in early 2014.   (Id. at 19).   Aura US is Aura
International's first and only United States subsidiary, and Jones'
role has been to grow Aura US's business.  (See id.).

As Aura US's business began to expand, on September 1, 2015,
Aura Light moved its only United States office from Reno, Nevada to
Irvine, California.   (See Jones Dep. 37); (ECF No. 15-4).   By
October 2015, Jones was the only direct employee of Aura US in the
Irvine, California office, (Jones Dep. 26) and she performed all of
Aura US' "day-to-day activities" from there, (id. at 41).  Some of
these activities included "sales and operations," (Jones Dep. 41),
and soliciting and processing orders for lighting products, (Jones
Aff. ¶ 6).  Defendants present no evidence to dispute that Jones
performed these activities in California.

It is also undisputed that Aura US has never performed any of
the following activities in Maryland: held a corporate meeting,
maintained an office, employed anyone, paid taxes, or warehoused
its products.  (Jones Aff. ¶¶ 8-12); (Jones Dep. at 24).  What is
more, Aura US maintains all of its sales and operations records at

its Irvine, California office.   (Jones Aff. ¶ 6).   Aura US scans and sends some of the sales records, such as invoices and bank statements, to ClearView in Maryland so ClearView can perform its recordkeeping duties.   (Jones Dep. 35).   But, Aura US maintains the original copies of these documents in California.   (Id. 35, 36).

Aura US also presents uncontroverted deposition testimony from James Elder, a designated representative of ClearView.   According to Elder, Aura US performs some corporate activities in which ClearView plays absolutely no part.   For instance, ClearView has never taken an order for Aura US's products because Jones takes all the orders.   (Elder Dep. 120).   Elder further testified that in almost every instance, ClearView only acts on behalf of Aura US after Jones provides her express approval.   For example, ClearView pays invoices on Aura US's behalf, but ClearView doesn't "pay anything unless [Jones] says to pay it" because "everything has to flow through her."   (Id. 119).   When it comes to invoices for payments to Aura US, ClearView records the invoices "at the direction of [Jones]."   (Id. 119-21).   Jones confirmed that ClearView performs bookkeeping, accounting, and leasing "upon [her] approval."   (Jones Dep. 58).

Defendants rely heavily on an authorization letter in which Aura International designated Elder and Michael Buher, also a ClearView employee, as Acting Secretaries for the corporation. (See ECF No. 15-5).   Elder testified the purpose of the

authorization letter was merely to allow ClearView to become a signatory at Aura International's bank.  (Elder Dep. 69).  As Defendants highlight, however, Elder did more than sign checks for Aura US -- he also signed contracts on behalf of Aura US.  For instance, Elder signed a contract to lease a Xerox machine, (id. 33), and he and Jones signed Aura US's lease for the office space in Irvine, California, (Jones Dep. at 59).  But, Elder only signed agreements on behalf of Aura US with Jones' approval.  (Jones Dep. 32, 94); (Elder Dep. 75).  Elder was not authorized to negotiate contracts on behalf of Aura US. (Jones Dep. 32).

Although Elder's designation as Acting Secretary might suggest he worked as a corporate officer for Aura International, Elder has never attended any of Aura International's board meetings.  (Elder Dep. 64).  Jones, however, has attended these meetings.  (Jones Dep. 23-25).  Moreover, Elder had no insight into Aura International's or Aura US's strategic plans or budgets.  (Elder Dep. 83).  He described ClearView's role as "record keepers" that played "no part in strategy at all."  (Id.).

Defendants also rely heavily Aura US's corporate registration documents in California and Maryland in which Aura US listed ClearView's Hunt Valley, Maryland address as Aura US's address.  (See ECF Nos. 10-1, 10-2).  Defendants' reliance on these documents is misplaced.  As this Court explained in Merson, there is a "fundamental difference" between the address a corporation uses on

11

its corporate registration documents and the corporation's principal place of business for purposes of 28 U.S.C. § 1332. 524 F.Supp.2d at 723. Just like in Merson, this Court declines to construe the act of providing an address for corporate registration documents as an affirmation of corporate citizenship. See id.

Based on the foregoing undisputed evidence, the Court concludes Aura US has shown by a preponderance of the evidence that its principal place of business was not in Maryland when it commenced the Actions. At that time, Jones performed the bulk of Aura US's corporate activities and day-to-day operations in Irvine, California. See Merson, 524 F.Supp.2d at 722 (citing Peterson, 142 F.3d at 184-85). To be sure, ClearView provided several administrative services from its Hunt Valley, Maryland office, but only based on Jones's express authorization from California. Notwithstanding Elder's designation as an Acting Secretary, he neither attended board meetings nor participated in shaping Aura US's or Aura International's corporate strategy. As Elder put it, he and ClearView were merely "record keepers." (Elder Dep. 83). And, without Jones' marketing, sales, and other operations activities in California, there would have been no records for ClearView to keep. Furthermore, Aura Light's corporate registration documents are not affirmations of corporate citizenship. See Merson, 524 F.Supp.2d at 722. Accordingly, the

12

Court will deny Defendants' Motions to Dismiss and Supplemental Motions to Dismiss.

**B.** **Motion for Summary Judgment**

    **1.** **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

Once a motion for summary judgment is properly made and supported, the nonmovant has the burden of showing that a genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). If the nonmoving party has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

**2. Analysis**

Aura US argues Aura II is a simple breach of contract case. Aura US attaches fifteen purchase orders (the "Purchase Orders") signed by Palitti as manager of LTF International and sixteen invoices (the "Invoices") Aura US issued to Defendants. (See ECF Nos. 1-1, 1-2, GLR-15-3200). According to Aura US, the Purchase Orders and Invoices demonstrate Defendants had a contractual obligation to pay Aura US for the lighting products it acquired from James and delivered to Defendants during the first few months

14

of 2015.   Aura US maintains Defendants breached this obligation when they accepted delivery of the products but only paid for a small portion of them.

Defendants respond that <u>Aura II</u> is anything but a simple breach of contract case.   They argue the Court must construe the Purchase Orders and Invoices in the context of the negotiations between Aura US and Defendants regarding a potential joint venture. According to Defendants, executives from Aura International represented that Aura US would not collect on the purchase orders because they were only necessary to encourage Aura International's board of directors to provide funding for a joint venture. Defendants relied on this representation and, as such, never agreed to purchase James' products from Aura US under the terms specified in the Purchase Orders and Invoices.   Specifically, Defendants never agreed to Aura's mark-up prices, shipping charges, or payment terms of "Net 30."   (<u>See</u> ECF No. 1-2).   Further, Defendants maintain that without discovery, they cannot present facts essential to their opposition.

As a general matter, "summary judgment is appropriate only after 'adequate time for discovery.'"   <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 280 (4th Cir. 2013) (quoting <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996)); <u>see</u> <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) ("[S]ummary

judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5 (1986))).  A party opposing summary judgment, however, "cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." <u>Harrods Ltd. v. Sixty Internet Domain Names</u>, 302 F.3d 214, 244 (4th Cir. 2002) (quoting <u>Evans</u>, 80 F.3d at 961).

Parties typically satisfy the requirement to specify their need for discovery by submitting a Rule 56(d) affidavit or declaration.  Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." <u>Nguyen v. CNA Corp.</u>, 44 F.3d 234, 242 (4th Cir. 1995) (quoting <u>Paddington Partners v. Bouchard</u>, 34 F.3d 1132, 1137 (2d Cir. 1994)).  Importantly, "Rule 56(d) affidavits may not demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" <u>Gardner v. United States</u>, No. JKB-15-

16

2874, 2016 WL 2594826, at *4 (D.Md. May 4, 2016) (quoting Strag v. Bd. of Trs., 55 F.3d 943, 954 (4th Cir. 1995)).

Here, Defendants submit a Rule 56(d) affidavit from James R. Deveney, III, a member of LTF.   (See ECF No. 22-2, GLR-15-3200). Before determining whether the evidence Defendants seek to discover could create a genuine dispute of material fact, the Court must briefly review the substantive law surrounding contract formation to help identify material facts.

The Court applies the substantive law of Maryland because Aura US's breach of contract action arose in Maryland.   Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).   Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001).   Creating a contractual obligation requires mutual assent.   See Cochran v. Norkunas, 919 A.2d 700, 708 (Md. 2007).   There are two elements of mutual assent: "(1) intent to be bound, and (2) definiteness of terms."   Id.   "Failure of parties to agree on an essential term of a contract may indicate that the mutual assent required to make a contract is lacking."   Id.

Defendants argue they neither agreed to acquire products from James through the Purchase Order nor accepted the terms of the

Invoices.  In his affidavit, Deveney explains that to support these defenses, Defendants seek discovery regarding communications between Defendants and Aura US's and Aura International's corporate officers and board members related to how the parties would structure their arrangement with James.  (ECF No. 22-2, JFM-15-3200).  Deveney asserts that the agreements the parties drafted for participation in the joint venture were often inconsistent with Defendants' expectations because while acting as an intermediary between Aura International and Defendants during the negotiations, Jones communicated different information to Defendants and Aura International.  (Id.).  Deveney identifies Martin Malmros, Chief Executive Officer and Group President of Aura International, as one of the officers from whom Defendants seek discovery.  (Id.).  Deveney maintains Malmros told Defendants that the Purchase Orders were only necessary to convince the Aura International board to fund a joint venture between Aura US and Defendants.  (Id.).

Because the discovery Defendants seek is relevant to whether there was mutual assent for the Purchase Orders and Invoices, the Court concludes it could "create[] a genuine issue of material fact sufficient to defeat summary judgment.'" Gardner, 2016 WL 2594826, at *4 (quoting Strag, 55 F.3d at 954).  Accordingly, the Court will deny Aura US's Motion for Summary Judgment without prejudice and enter a scheduling order so the parties can pursue discovery.

**III. CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss Complaint for Lack of Subject-Matter Jurisdiction (ECF No. 5, GLR-15-3198; ECF No. 5, JFM-15-3200) and Supplemental Motions to Dismiss Complaint for Lack of Subject-Matter Jurisdiction (ECF No. 10, GLR-15-3198; ECF No. 20, JFM-15-3200) are DENIED. Aura Light's Motion for Summary Judgment (ECF No. 11, JFM-15-3200) is DENIED WITHOUT PREJUDICE. The Court will issue a scheduling order. A separate Order follows.

Entered this 15th day of September, 2016

/s/
_____
George L. Russell, III
United States District Judge