IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AURA LIGHT US INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action Nos. GLR-15-3198, GLR-15-3200 |
| LTF INTERNATIONAL LLC, et al., | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Aura Light US Inc.'s ("Aura") Motion for Partial Summary Judgment (ECF No. 46)[1] and Defendant Paul V. Palitti, Jr.'s Motion to Dismiss (ECF No. 56). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part Aura's Motion and grant Palitti's Motion.

### I. BACKGROUND

Between December 2014 and May 2015, Defendants LTF International, LLC ("LTF International"), LTF Lighting, LLC ("LTF Lighting"), WIS Lighting, LLC ("WIS Lighting") (collectively, the "Lighting Defendants"), and Paul V. Palitti, Jr. submitted thirty-four Purchase Orders for the manufacture and delivery of specific lighting

---

[1] Unless otherwise indicated, all references to the Court's electronic filing system are to Aura Light US Inc. v. LTF International LLC (Aura Light I), No. 15-cv-03198-GLR (D.Md.). "Aura Light II 1st Am. Compl." refers to the First Amended Complaint in Aura Light US Inc. v. LTF International LLC (Aura Light II), No. 15-cv-03200-GLR (D.Md.).

products.[2]  (1st Am. Compl. ¶ 14, ECF No. 54; Aura Light II 1st Am. Compl. ¶ 15, ECF No. 38-4,).[3]  After manufacturing, or manufacturing and delivering, the lighting products, Aura sent Defendants thirty-four Invoices, which corresponded with each Purchase Order.  (1st Am. Compl. ¶ 19; Aura Light II 1st Am. Compl. ¶ 19).  Defendants failed to pay the amounts due under the Invoices.  (1st Am. Compl. ¶ 20; Aura Light II 1st Am. Compl. ¶ 20; Svennson Aff. ¶ 14, ECF No. 46-2).

On May 5, 2017, Aura filed its Motion for Partial Summary Judgment against the Lighting Defendants in Aura Light II.  (ECF No. 46).  The Lighting Defendants filed their Response on May 26, 2017.  (ECF No. 49).  On June 19, 2017, Aura filed its Reply.  (ECF No. 55).

On June 8, 2017, while Aura's Motion was pending but unripe, the Court denied as moot without prejudice LTF International and Palitti's Motion for Judgment on the Pleadings.  (ECF Nos. 52, 53).  The Court also granted Aura's Motion for Leave to File Amended Complaints in Aura Light I and Aura Light II.  (ECF Nos. 52, 53).  Both First Amended Complaints added WIS Lighting as a Defendant and added allegations that LTF International, LTF Lighting, and WIS Lighting entered into a "Guaranty Agreement" (the "Guaranty") under which the Lighting Defendants "each

---

[2] The Court provided the factual background of this case in its June 8, 2017 Memorandum Opinion (ECF No. 52).  The Court repeats only facts relevant to the pending Motions. Capitalized terms retain their definitions from the June 8, 2017 Opinions.

[3] Unless otherwise noted, the facts outlined here are set forth in the First Amended Complaints.  To the extent the Court discusses facts that Aura does not allege in its First Amended Complaints, they are uncontroverted and the Court views them in the light most favorable to the Lighting Defendants.  The Court will address additional facts when discussing applicable law.

unconditionally and irrevocably guaranteed the payment of any and all sums due and owing" to Aura from LTF International. (1st Am. Compl. ¶ 16; Aura Light II 1st Am. Compl. ¶ 16). The First Amended Complaints also added another breach of contract count (Count II) against the Lighting Defendants for their breach of the Guaranty. (1st Am. Compl. ¶¶ 28–34; Aura Light II 1st Am. Compl. ¶¶ 27–34).

On June 23, 2017, Palitti filed his Motion to Dismiss. (ECF No. 56). Defendants filed their Response on July 18, 2017. (ECF No. 55). To date, the Court has not received a Reply from Palitti.

## II. DISCUSSION

### A. Palitti's Motion to Dismiss[4]

#### 1. Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[4] Unless otherwise noted, the Court describes facts taken from the First Amended Complaint in Aura Light I and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

3

the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2. Analysis

As a threshold matter, the Court notes that in its June 8, 2017 Order granting Aura's Motion for Leave to File Amended Complaints, the Court directed the Clerk to docket the First Amended Complaints in both Aura Light I and Aura Light II. (June 8, 2017 Order, ECF No. 53). The Clerk, however, only docketed the First Amended Complaint in Aura Light I. (See ECF Nos. 54, 38-4). As a result, Palitti now moves to

dismiss only the First Amended Complaint in Aura Light I. The Court will, therefore, direct the Clerk to docket the First Amended Complaint in Aura Light II (ECF No. 38-4), consistent with the Court's June 8, 2017 Order. (See June 8, 2017 Order). The Court will also direct Palitti to file a status report within ten days of the date of this Memorandum Opinion and Order addressing whether he intends to file a motion to dismiss the First Amended Complaint in Aura Light II that incorporates or includes any of the same arguments in his currently pending Motion.

Turning to Palitti's Motion, in Aura Light I, Aura brings a breach of contract claim against LTF International, LTF Lighting, and Palitti for their failure to pay for the products Aura manufactured for LTF International.[5] Palitti argues that the Court should dismiss him from Aura Light I because the First Amended Complaint fails to plausibly state a breach of contract claim against him. The Court agrees for at least two reasons.

First, in the Court's June 8, 2017 Memorandum Opinion, the Court concluded that no contracts existed between Palitti and Aura because Palitti had not offered to purchase any goods from Aura—he had not signed the Purchase Orders in his personal capacity. (June 8, 2017 Mem. Op. ["Mem. Op."] at 9–10, ECF No. 52). Aura's First Amended Complaint in Aura Light I does not alter this fact. Second, although the First Amended Complaint in Aura Light I adds allegations related to the Guaranty, Aura does not bring its new breach of contract count based on the Guaranty against Palitti. Thus, the Court concludes that Aura does not plausibly allege a breach of contract claim against Palitti.

---

[5] Aura uses "LTF" to refer to the breaching party in Count I, but Aura brings the count against LTF International, LTF Lighting, and Palitti. Accordingly, the Court infers that Aura's use of LTF encompasses these three Defendants.

Nevertheless, Aura seeks to retain Palitti as a party to Aura Light I because "post-judgment discovery may reveal a basis for Mr. Palitti's liability," such as piercing the corporate veil or Palitti being an alter ego of one of the Lighting Defendants. (Pl.'s Resp. at 1, ECF No. 58). Aura, however, is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998).

Here, the First Amended Complaint in Aura Light I does not contain any allegations to support alter ego or veil-piercing theories of liability. Accordingly, the Court will grant Palitti's Motion.

**B.     Aura's Motion for Partial Summary Judgment**

    **1.     Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would

be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**2.   Analysis**

In Aura Light II, Aura asserts two breach of contract claims, one based on fifteen Purchase Orders (Count I), and the other based on the Guaranty (Count II). (See GLR-Aura Light II 1st Am. Compl.). Under Maryland law, a plaintiff alleging a breach of contract must establish that: (1) the defendant owed the plaintiff a contractual obligation; and (2) defendant breached that obligation. Polek v. J.P. Morgan Chase Bank, N.A., 36 A.3d 399, 416 (Md. 2012) (quoting Cont'l Masonry Co. v. Verdel Constr. Co., 369 A.2d 566, 569 (Md. 1977)) (internal quotation marks omitted).[6] For there to be a contractual obligation, the parties must have formed a contract. Because the Purchase Orders involve purported contracts for the sale of goods, the Uniform Commercial Code ("UCC") governs whether the parties formed a contract under those documents. See Md. Code Ann., Com. Law ["CL"] § 2-201 (West 2018). The Guaranty, which involves an alleged obligation to pay monies owed to Aura and does not involve the sale of goods, is governed by Maryland common law.

Aura seeks judgment against the Lighting Defendants, jointly and severally, in the amount of $4,307,463.00—all amounts due and owing under fifteen of the thirty-four

---

[6] The Court previously determined that Maryland law applies to this action. (Mem. Op. at 6 n.3).

Purchase Orders at issue—plus post-judgment interest.[7] The amounts due under the fifteen Purchase Orders are as follows:

| Purchase Order Date | Container No./Invoice No. | Purchase Order | Amount Due |
|---|---|---|---|
| December 19, 2014 | 6060 | LTF14-12182 | $1,288,809.00 |
| February 18, 2015 | 1/6035 | LTF14-12184 Rev. | $324,525.00 |
| January 1, 2015 | 2/6036 | LTF14-12185 Rev. | $376,610.00 |
| February 27, 2015 | 3/6037 | LTF14-12186 | $148,500.00 |
| February 27, 2015 | 4/6041 | LTF14-12189 Rev. | $398,250.00 |
| February 27, 2015 | 5/6042 | LTF14-12190 Rev. | $283,500.00 |
| February 27, 2015 | 6/6043 | LTF14-12197 Rev. | $283,395.00 |
| February 27, 2015 | 7/6044 | LTF14-12181 Rev. | $173,955.00[8] |
| February 27, 2015 | 8/6045 | LTF14-12182 Rev. | $155,250.00 |
| March 24, 2015 | 9/6047 | LTF15-12203 | $283,500.00[9] |
| March 24, 2015 | 10/6048 | LTF15-12204 | $283,500.00 |
| March 3, 2015 | FOB CAL 3 | LTF15-12134 | $102,250.00 |
| March 13, 2015 | 3, part 2 | LTF15-12200 | $86,250.00 |
| March 3, 2015 | FOB CHINA | LTF15-12172 | $70,869.00 |
| March 13, 2015 | 8, part 2 | LTF15-12202 | $48,300.00 |
| | | **TOTAL DUE** | **$4,307,463.00** |

Aura argues that there is no dispute of material fact that between December 2014 and April 2015, LTF International submitted the Purchase Orders to Aura through which LTF International purchased millions of dollars in lighting equipment and supplies and that Aura performed its obligations under these Purchase Orders. Aura further argues that there is no dispute of material fact regarding the Lighting Defendants' failure to pay

---

[7] Unless otherwise noted, the Court uses the amounts due from LTF International's internal accounting records, (Pl.'s Reply Ex. D, ECF No. 55-4), which Aura accepts as undisputed for the purposes of resolving its Motion.

[8] Because it is difficult to discern whether the amount on Purchase Order LTF14-12181 Rev. is $193,955.00 or $173,955.00, Aura accepts the lesser amount for the purposes of resolving its Motion.

[9] The amounts due for Containers 9 and 10 come from their respective Purchase Orders. (See Pl.'s Mot. Exs. C.10, C.11, ECF Nos. 46-13, 46-14).

the amounts due under the fifteen Purchase Orders, the amounts themselves, or that the Lighting Defendants signed the Guaranty, which obligated each of them, jointly and severally, to pay the amounts due and owing under the Purchase Orders.[10]

The Lighting Defendants counter that Aura fails to establish offer, acceptance, or a meeting of the minds regarding the Purchase Orders; they do not address the Guaranty. Specifically, the Lighting Defendants assert that LTF International never would have agreed to the upcharges and "net 30" payment term in the Purchase Orders. Alternatively, the Lighting Defendants argue that Aura should be estopped from asserting its rights under the Purchase Orders. The Court agrees with Aura to the extent that it seeks judgment against the Lighting Defendants premised on a breach of the Guaranty. The Court addresses the Purchase Orders first because the Lighting Defendants' liability under the Guaranty hinges on whether the Purchase Orders constitute contracts between Aura and LTF International.

        **a.     Purchase Orders**

At bottom, the Court concludes that there is no dispute of material fact that the fifteen Purchase Orders are binding contracts, that LTF International is obligated to pay the amounts due under the Purchase Orders, and that the Lighting Defendants are not jointly and severally liable to pay the amounts due.

---

[10] Although Aura does not specify on which counts it seeks summary judgment, because Aura argues that the Court should grant summary judgment in its favor related to the Purchase Orders and the Guaranty, the Court construes Aura's Motion as a motion for summary judgment as to Counts I and II of the First Amended Complaint in <u>Aura Light II</u>.

10

### i. The Purchase Orders as Binding Contracts

The UCC provides that a "contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." CL § 2-204(1). This provision affirms that a manifestation of mutual assent is an essential prerequisite of contract formation. Archer W. Contractors, LLC v. Synalloy Fabrication, LLC, No. CCB-14-3031, 2016 WL 930965, at *6 (D.Md. Mar. 11, 2016). Not just any manifestation of mutual assent will do—the UCC "requires 'an objective manifestation of mutual assent by the parties.'" Id. (quoting Audio Visual Assocs., Inc. v. Sharp Elecs. Corp., 210 F.3d 254, 258 (4th Cir. 2000)). Such a manifestation "ordinarily takes the form of an offer by one party followed by an acceptance by the other party." Id. (quoting Audio Visual Assocs., 210 F.3d at 258–59) (internal quotation marks omitted). "In the case of contracts for the sale of goods, the offer usually takes the form of a purchase order." Id. (quoting Audio Visual Assocs., 210 F.3d at 259).

An order or offer to buy goods is "construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of . . . goods." CL § 2-206. The seller "can accept such an offer in any of several ways, often determined by custom and practice." Audio Visual Assocs., 210 F.3d at 259 (citing CL §§ 2-204(1), 2-206(1), 2-208). The seller often accepts an offer made through a purchase order by a written acknowledgment." Id. But the seller "may also accept simply by performance and delivery of the goods." Id.

Here, the fifteen Purchase Orders at issue show that LTF International offered to purchase lighting products from Aura. (See Pl.'s Mot. Partial Summ. J. ["Pl.'s Mot."] Exs. C.1–C.15, ECF Nos. 46-4 through 46-18). The Lighting Defendants do not dispute that LTF International submitted the fifteen Purchase Orders to Aura. The Lighting Defendants do, however, dispute whether the Purchase Orders signify an offer to purchase the lighting products. They contend that the Purchase Orders were instead created to secure funding from Aura's board of directors for the proposed joint venture between the parties. Aura counters that the fifteen Purchase Orders at issue here pre-date any discussions of a joint venture between the parties, and therefore the Lighting Defendants are obligated to pay the amounts due under the Purchase Orders. Aura also points to LTF International's internal accounting records, which reflect similar amounts due and owing to Aura. The Court agrees with Aura.

In support of their argument, the Lighting Defendants point to an affidavit from Palitti. The contents of Palitti's affidavit reveal, however, that Palitti "expressed concern over [including] the upcharge and shipping charges" in the Purchase Orders in April 2015. (Palitti Aff. ¶ 12, ECF No. 22-1, Aura Light II). Palitti also objected to the "purchase order format with the upcharge and shipping costs" at that time. (Id.). But, notably, none of Palitti's statements that show an intent not to be bound by the terms of the fifteen Purchase Orders occurred until after LTF International sent them to Aura.

The evidence in the record also shows that Palitti signed each of the fifteen Purchase Orders in his capacity as Manager of LTF International, (see Def.'s Mot. Exs. C.1–C.15), and that LTF International submitted the Purchase Orders to Aura. (Palitti

Dep. at 41–52, 125–204, ECF No. 46-3; Svensson Aff. ¶¶ 8–9). Further, the Lighting Defendants do not dispute that Aura sent LTF International invoices that correspond with each of the fifteen Purchase Orders, (Svensson Aff. ¶¶ 9, 10; Palitti Dep. at 41–52, 125–204, ECF No. 46-3), which is sufficient to manifest Aura's acceptance of LTF International's offers. See Audio Visual Assocs., 210 F.3d at 259. Thus, the Court concludes that there is no dispute of material fact regarding LTF International's intent to be bound by the terms of the fifteen Purchase Orders.

Relatedly, the Court is not persuaded by the Lighting Defendants' equitable estoppel argument. Equitable estoppel precludes a party from asserting its rights when:

> (1) the party to be estopped knew the true facts; (2) the party to be estopped intended for his conduct to be acted upon or acted in such a way that the party asserting estoppel had a right to believe that it was intended; (3) the party claiming estoppel was ignorant of the true facts; and (4) the misconduct was relied upon to the detriment of the parties seeking estoppel.

Primerica Life Ins. Co. v. Zapata, No. GJH-14-01202, 2015 WL 1212827, at *5 (D.Md. Mar. 16, 2015) (quoting Austin v. Winter, 286 F.App'x 31, 37–38 (4th Cir. 2008)).

Here, the Lighting Defendants again point to Palitti's affidavit to argue that Aura should be estopped from asserting its rights under the fifteen Purchase Orders. The Lighting Defendants maintain that Palitti "repeatedly raised objections" to the upcharges on Aura's Invoices, and that Aura representatives "repeatedly assured" Palitti that there were upcharges to obtain funding from Aura's board of directors for their partnership venture and that LTF International would be taken care of on "the back end." (Defs.' Resp. Opp'n Mot. Partial Summ. J. ["Def.'s Opp'n"] at 12–13, ECF No. 49). But, as

13

discussed previously, all of these facts post-date the fifteen Purchase Orders. The first discussions of a possible partnership between the parties occurred at a meeting in Ocean City, Maryland in February 2015. (Palitti Aff. ¶ 8; Palitti Dep. at 58–60, 294–95, ECF No. 49-1). Aura representatives did not make any of these assurances to LTF International until April 2015. (Palitti Aff. ¶ 12). LTF International, therefore, could not have relied upon Aura's alleged misconduct to its detriment because that conduct occurred after it had already entered into these agreements with Aura.

In sum, the Court concludes that there is no dispute of material fact that the fifteen Purchase Orders constitute binding contracts for LTF International to purchase lighting products from Aura.

###### ii. Damages

Under the UCC, "[a] buyer's failure to pay for goods is a material breach of contract that entitles the seller to damages." Sagent Tech., Inc. v. Micros Sys., Inc., 276 F.Supp.2d 464, 469 (D.Md. 2003) (citing CL §§ 2-607, 2-709). "When a buyer breaches a contract for the sale of goods by failing to pay the purchase price, the seller may recover the purchase price as damages." Sagent, 276 F.Supp.2d at 469 (citing CL § 2-709). This is true of goods accepted by the buyer, CL § 2-709(1)(a), and goods identified to the contract if the seller made a "reasonable effort to resell them at a reasonable price," CL § 2-709(1)(b).

In this case, there is no dispute of material fact regarding the amounts due under the fifteen Purchase Orders or that LTF International failed to pay the amounts due under them. (Palitti Dep. at 41–52, 125–204, ECF No. 46-3; Svensson Aff. ¶¶ 8–9). There is

also no dispute of material fact that LTF International accepted all but two of the containers associated with the fifteen Purchase Orders—Containers 9 and 10. (Pl.'s Reply Ex. E ["Deveney Email"] at 1, ECF No. 55-5). Although LTF International did not accept delivery of the products in Containers 9 and 10, Palitti admitted that LTF International ordered these shipments. (Palitti Dep. at 192–98, ECF No. 46-3).[11] Though LTF International did not accept Containers 9 and 10, LTF International still entered into a binding agreement to purchase the lighting products in those containers. In addition, the Lighting Defendants do not address whether Aura made a "reasonable effort to resell" the lighting products at a "reasonable price." See CL § 2-709(1)(b). Indeed, the Lighting Defendants did not even address in their briefs LTF Internationals' refusal of Containers 9 and 10, let alone Aura's resale requirements under the UCC.

The Court, therefore, concludes that there is no dispute of material fact over whether Aura may recover the contract price for the goods in Containers 9 and 10. Consequently, the Court further concludes that LTF International is obligated to pay the amounts due under the fifteen Purchase Orders at issue in Aura Light II.

### iii. Joint and Several Liability

The Court will not enter judgment in favor of Aura against the Lighting Defendants jointly and severally. In Count I of the First Amended Complaint in Aura Light II, Aura only seeks judgment against LTF International, LTF Lighting, and Palitti,

---

[11] In August 2015, James Deveney, a member of LTF International, advised Aura that it would no longer accept shipments of its products, and specifically refused to accept delivery of Containers 9 through 12. (Deveney Email at 1). Containers 11 and 12 are not associated with the fifteen Purchase Orders on which Aura seeks summary judgment.

but not WIS Lighting. Additionally, the Court concluded in its June 8, 2017 Memorandum Opinion that Aura failed to plausibly state a claim for breach of contract against LTF Lighting because, based on the Purchase Orders, LTF Lighting did not offer to purchase goods from Aura. (Mem. Op. at 9). As the Court observed, "the Purchase Orders show that only LTF International issued them." (Id.). Aura did not add or change the allegations against LTF Lighting and Palitti in its First Amended Complaint in Aura Light II, nor does any evidence in the record reflect that LTF Lighting and Palitti were parties to the Purchase Orders. Thus, the Court concludes that Aura is not entitled to judgement as a matter of law against the Lighting Defendants, jointly and severally, on the amounts due under the fifteen Purchase Orders at issue. Accordingly, the Court will deny Aura's Motion as to Count I.

### b. Guaranty

Because neither party disputes that the Guaranty constitutes a valid contract, the Court will analyze the parties' intent to be bound under the principle of objective contract interpretation dictated by Maryland law. See Cochran v. Norkunas, 919 A.2d 700, 709 (Md. 2007). This principle looks at "what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." Id. at 710 (citing Walton v. Mariner Health, 894 A.2d 584, 594 (Md. 2006)). If the language of the contract is unambiguous, the Court will "give effect to its plain meaning" and will not "contemplate what the parties may have subjectively intended by certain terms at the time of formation." Id. at 709.

A suretyship contract is a "tripartite agreement among a principal obligor, his obligee, and a surety." Speechly Bircham, LLP v. Miller, No. 8:10-CV-03041-AW, 2012 WL 4341574, at *7 (D.Md. Sept. 20, 2012) (quoting Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1309 (Md. 1985)). It is "a direct and original undertaking under which the surety is primarily or jointly liable with the principal obligor." Id. (quoting Gen. Motors Acceptance Corp., 492 A.2d at 1309)). As a result, the surety "is responsible at once if the principal obligor fails to perform." Id. (quoting Gen. Motors Acceptance Corp., 492 A.2d at 1309)). Courts determine whether a party has entered a suretyship contract by examining "the substance of the agreement" rather than "its nomenclature." Id. (quoting Gen. Motors Acceptance Corp., 492 A.2d at 1311). Further, "[t]he traditional rules of contract interpretation determine the liability of a surety." Inst. of Mission Helpers of Balt. City v. Reliance Ins. Co., 812 F.Supp. 72, 74 (D.Md. 1992) (citing Republic Ins. Co. v. Bd. of Cty. Comm'rs, 511 A.2d 1136 (Md.Ct.Spec.App. 1986); then citing Hosp. for the Women of Md. v. U.S. Fidelity & Guaranty Co., 11 A.2d 457 (Md. 1940)). Accordingly, the Court confines its analysis to the four corners of the agreement. Cochran, 919 A.2d at 710 (citing Walton, 894 A.2d at 594).

Turning to the Guaranty, the Court concludes that a reasonable person in the position of the parties would have understood that the Guaranty created a tripartite agreement between Aura, LTF International, and Lighting Defendants—a surety agreement, rather than a typical guaranty agreement. All three of the Lighting Defendants, defined collectively in the Guaranty as the "Guarantor," are parties to the agreement, and Palitti, acting in his capacity as Manager of each of the Lighting

17

Defendants, signed the Guaranty on January 6, 2015. (Pl.'s Mot. Ex. D ["Guaranty"] at 1, ECF No. 46-19). Although the agreement is titled as a "Guaranty," the terms of Sections 1 and 2 of the Guaranty, in pertinent part, establish the suretyship nature of the agreement:

> The Guarantor unconditionally and irrevocably guarantees payment of any and all sums due and owing by [LTF] International to [Aura], whether now existing or hereafter arising, including, but not limited to, all amounts of principal, interest, penalties, reimbursements, advancements, escrows and fees due and owing under the Financing. The Guarantor further unconditionally and irrevocably guarantees that all sums due and owing shall be paid when and as due, whether by reason of installment, maturity, acceleration or otherwise, time being of the essence.
> \* \* \*
> The guaranty of the Guarantor hereunder shall be direct, immediate and primary and is one of payment and not just collection. The Guarantor shall be a **surety** to the Company with respect to the guaranty of the Obligations as set forth herein.

(Emphasis added.) (Id. at 1).[12] The plain language of the Guaranty, therefore, obligates the Lighting Defendants to pay "all sums due and owing" by LTF International to Aura. Section 9 provides that the Guaranty is "binding" on the Lighting Defendants "regardless of how long before or after the date of th[e] Guaranty any of the Obligations[13] were or are incurred by the Guarantor." (Id. at 2). By its terms, then, the Guaranty encompasses the Purchase Orders LTF International submitted to Aura both before and after the date of the

---

[12] Citations to the Guaranty are to the Court's electronic docketing system's pagination.

[13] "Obligations" is defined as "the repayment of Financing . . . in accordance with the terms of the Guaranty." (Guaranty at 1). The Purchase Orders are included in the Guaranty's definition of "Financing." (See id.).

Guaranty.  In other words, the Guaranty applies to the fifteen Purchase Orders.  Finally, Section 12 provides that the liabilities under the Guaranty are "joint and several."  (Id. at 3).

The Lighting Defendants do not point to evidence in the record demonstrating a genuine dispute of material fact regarding the Guaranty—its formation, terms, or the amounts the Lighting Defendants owe.  Thus, Aura is entitled to judgment as a matter of law against the Lighting Defendants as to the amounts LTF International owes Aura under the fifteen Purchase Orders at issue based on the Guaranty.  Accordingly, the Court will grant Aura's Motion as to Count II.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Palitti's Motion to Dismiss (ECF No. 56).  The Court will also grant in part and deny in part Aura's Motion for Partial Summary Judgment (ECF No. 46).  The Court will deny the Motion as to Count I of the First Amended Complaint in Aura Light II and grant the Motion as to Count II of the First Amended Complaint in Aura Light II.  A separate Order follows.

Entered this 19th day of March, 2018.                    /s/
                                                         _____
                                                         George L. Russell, III
                                                         United States District Judge